UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ASLAN MUSAEV,

       Petitioner,

v.

BRIAN ENGLISH,

       Respondent.

CAUSE NO. 3:26cv543 DRL-SJF

## OPINION AND ORDER

Immigration detainee Aslan Musaev, a litigant without counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Musaev is a citizen of Russia who entered the United States without inspection. He was apprehended by United States Border Patrol agents in El Paso, Texas, in May 2022 and was initially placed in expedited removal proceedings, but this was later canceled for reasons not disclosed in the record. He was then issued a notice to appear in immigration court and released on his own recognizance [10-2]. In May 2025, he was arrested in New York on a stalking charge. On May 8, 2025, he was taken into custody by United States Immigration and Customs Enforcement (ICE) in New York pursuant to an administrative warrant [10-4]. He is currently detained at Miami Correctional Facility pending the outcome of his removal proceedings. He argues that he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8

U.S.C. § 1225(b)(2).[1] He seeks immediate release from custody or a prompt custody redetermination hearing before an immigration judge.

In an order to show cause, the court directed the respondent to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondent was instructed to address why this case differs from *Aguilar* (or *Singh* for that matter), why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Musaev filed a reply.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Musaev's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguilar* and *Singh* (and other decisions). *See supra*; *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419

---

[1] He also includes arguments about the medical care he is receiving at his current facility, but he cannot seek relief related to the conditions of his confinement in this habeas proceeding. *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (observing that "[c]hallenges to conditions of confinement . . . fall under [42 U.S.C.] § 1983," whereas "[a]ttacks on the fact or duration of the confinement" fall under the federal habeas statute).

(N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently found in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025), and thereafter reached an opinion on the merits that echoed what this court has done, though one judge concurred in the judgment and not in each part of the opinion's rationale and one judge dissented such that at times it reads as 2-1 decision and at times, in effect, as a 1-1-1 decision, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026). The Second Circuit, Sixth Circuit, and Eleventh Circuit reached a similar conclusion on the merits to *Aguilar* and *Singh.* The court also read the split decisions from the Fifth Circuit and Eighth Circuit. These opinions, together with others, illustrate just how complicated this patchwork of statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh*, not least in light of *Castañon-Nava*.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh.* The court can find no such reason. Whether Mr. Musaev is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

3

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Musaev's arrest.[2] By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

---

[2] Mr. Musaev asserted on information and belief in his petition that there was no warrant authorizing his arrest, but now that the warrant has been produced, he raises no issue about this in his reply. He suggests that he could not be lawfully arrested after he was released on his own recognizance in 2022; but, by regulation, the Attorney General has discretion to re-detain a noncitizen in removal proceedings who has been released on his or her own recognizance. 8 CFR § 236.1(c)(9). The BIA has held that "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). The record does not reveal whether the initial decision to release Mr. Musaev was made by the District Director or an immigration judge, but either way he cannot reasonably dispute that changed circumstances existed after he was arrested on a criminal charge while out on release. Although he argues that he did nothing wrong, he does not challenge the fact of the arrest.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these

procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Musaev gives no reason to believe this process is insufficient. Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

The court has the same expectation of compliance for the petitioner—follow the rules. It appears Mr. Musaev did not seek a custody redetermination before an immigration judge before filing his petition. When "exhaustion of administrative remedies is not statutorily mandated," "sound judicial discretion governs" whether it must be done. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). A court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy and administrative comity. *Id.* at 1017. A petitioner "with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court," *id.* at 1018, though "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue," *id.* at 1016.

Perhaps he thought it futile, because an immigration judge might follow *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but thus far in this circuit that guidance has been found erroneous such that, as the days pass, that futility seems harder to presume. At the

6

same time, maybe only a United States Supreme Court decision will make it so. Based on the early stages of now many § 2241 petitions and an unbroken record of denials of custody redeterminations (even when noncitizens have been arrested pursuant to a warrant like he was) because immigration officials believe they must be classified under § 1225(b)(2), the court finds there was no reasonable prospect of success, absent a determination by the court that he must be classified under § 1226(a), not § 1225(b)(2).

Recent proceedings in a case out of California suggest that *Hurtado* remains a barrier to relief for petitioners like Mr. Musaev. In February 2026, a judge in the Central District of California issued an order vacating *Hurtado* on behalf of a nationwide class of individuals who were arrested by ICE within the interior of the United States and denied an opportunity for bond. *See Bautista v. Santacruz*, No. 5:25cv01873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), *appeal docketed*, *In re Lazaro Maldonado Bautista*, No. 26-1044 (9th Cir. Feb. 23, 2026). The government appealed; and, at the government's request, the Ninth Circuit recently stayed the court's class certification order and final judgment "insofar as they extend beyond the Central District of California," and stayed the court's post-judgment order vacating *Hurtado* in its entirety. *Maldonado Bautista*, No. 26-1044 (9th Cir. order dated Mar. 31, 2026). The district judge's decision vacating *Hurtado* is thus unlikely to change the outcome of a custody redetermination motion filed by an individual like Mr. Musaev, who is outside of California. These recent proceedings also indicate that the government remains committed to its interpretation of § 1225(b)(2) notwithstanding the prior rulings of this court and others.

This doesn't affect the court's jurisdiction, but it does affect Mr. Musaev's relief. The appropriate remedy is to put the ball in his court to file a motion for custody redetermination

7

in his pending removal proceedings, with the benefit of a finding from the court that he is not categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). The court likewise must deny immediate release because Mr. Musaev has not met his burden of showing his current detention unlawful under § 1226.

For these reasons, the court:

(1) DENIES the petition [ECF 1], except to FIND that Aslan Musaev must be classified under 8 U.S.C. § 1226(a), including for purposes of any custody redetermination; and

(3) DIRECTS the clerk to enter final judgment and to close this case.

SO ORDERED.

May 21, 2026                                  *s/ Damon R. Leichty*
                                              Judge, United States District Court